IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANE REID                          :
                                    :
v.                                  :   Civil No. WMN-05-970
                                    :
SOUTH POINT GOLF                    :
HOLDINGS, INC. et al.               :
                                    :
                                    :

MEMORANDUM

Before the Court is Plaintiff/Counter Defendant Diane Reid's motion to dismiss, or in the alternative, for summary judgment. Paper No. 11.  Defendants/Counter Plaintiffs, South Point Golf Holdings, Inc. and Ocean City Golf & Yacht Club, Inc. (collectively "The Golf Club") have opposed the motion and Reid has replied.  Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Reid's motion will be denied.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Reid filed suit in this Court, on April 8, 2005, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., claiming that The Golf Club, her former employer, retaliated against her by unlawfully terminating her employment[1] after she complained of sexual harassment in the workplace.  On May 13, 2005, The Golf Club filed a counterclaim against Reid, alleging

---

[1] Reid's employment ended on September 11, 2003.  Defendants claim that Reid resigned.

that she converted $82,000 of The Golf Club's funds for her own use, that she was negligent in overseeing the receipt and deposit of cash received by The Golf Club and in reconciling its accounts, that she breached a fiduciary duty to oversee the deposits, that she intentionally misrepresented the fact that she was converting cash receipts to her own use, and that she failed to institute and/or maintain procedures to prevent the theft of cash.

Reid was the manager of The Golf Club for over 20 years. The Golf Club asserts that as manager, Reid was responsible for overseeing the administrative functions of The Golf Club, including:  the receipt of money from the golf course and the restaurant operation, the completion of deposit slips for all money received by The Golf Club, the deposit of money received into The Golf Club's bank account, and the reconciliation of the bank account. Defs.' Countercl. ¶ 2.

On May 27, 2005, Reid filed a motion to dismiss or, in the alternative, for summary judgment on the counterclaim arguing that The Golf Club "alleged no facts from which it could be inferred that Reid intentionally converted her employers' funds to her own use, and can supply no sufficiently specific averments in an affidavit or otherwise to contradict the affidavit of Reid."  Pl.'s Mot. 1.  Reid offers by affidavit a statement that she never converted funds and followed the mandated bookkeeping

2

practices.[2]   Reid Aff. ¶ 2-3.

## II. STANDARD OF LAW

A court considers only the pleadings when deciding a motion to dismiss.  If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Fed. R. Civ. P. 56.  See Villeda v. Prince George's County, MD., et al., 219 F. Supp. 2d 696, 698 (D. Md. 2002).  In this case, the parties have submitted matters outside the pleadings and the Court has considered these matters.  Reid's motion shall be considered a motion for summary judgment and decided accordingly.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation.  Id.

---

[2] In addition, Reid claims that in June 2003, she called to the attention of The Golf Club's accountant a $99,000 overdraft that encompassed the funds he identified as missing.  Reid Aff. ¶ 4.  In response, the accountant claims that Reid never called any missing receipts to his attention and that the $99,000 overdraft was "totally unrelated" to the funds identified as missing.  King Aff. ¶ 11.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's cause of action which it believes demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the movant demonstrates there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence which demonstrates that a triable issue of fact exists for trial. <u>Id.</u> at 324. The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1129 (4th Cir. 1987).

**III. DISCUSSION**

Reid argues that The Golf Club failed to present any facts from which it can be inferred that she intentionally converted funds to her own use. Reid, in her affidavit, strenuously denies ever converting funds to her own use and, based solely on her own denial, argues that summary judgment should be entered in her favor as to The Golf Club's conversion, breach of fiduciary duty, and intentional misrepresentation claims. Reid Aff. ¶ 2; Pl.'s Memo. 4. In reference to the negligence claim, Reid argues that this claim must fail because The Golf Club failed to identify

4

particular facts to suggest that any faulty procedures were her
responsibility.  Pl.'s Memo. 5.

Timothy King, The Golf Club's independent outside
accountant, however, through his affidavit provided facts from
which a reasonable jury could infer that Reid was involved in the
conversion of the funds, or that she failed in her duties of
overseeing the fiscal operations of The Golf Club.  King stated
that he discovered that in 2003 there were at least 79 missing
deposits, totaling over $82,000, that should have been deposited
into The Golf Club's bank account.  King Aff. ¶ 5; Defs.'
Countercl. ¶ 2.  King determined that Reid was the only full-time
employee who worked on all 28 of the days that cash receipts were
converted.  King Aff. ¶ 5.  King asserts that it was Reid's
responsibility to maintain bank account records and reconcile any
discrepancies between The Golf Club's records and the bank
records.  King Aff. ¶ 7.  In her Motion, Reid states that The
Golf Club "alleges Reid was the long time manger of its golf
club, with significant fiscal responsibilities."  Mot. 2.
Although Reid seems to disagree with The Golf Club's description
of her job responsibilities, she at no point offers a contrary
description of her position.[3]

---

[3] In the affidavit attached to Reid's Reply, she notes that
she was one of several individuals responsible for bank deposits.
Reid Aff. I ¶ 3 (Reid Aff. attached to reply will be "Reid Aff.
I").  This is the only near description of her responsibilities
that is given.

In addition, King explained that the structure of the
deposit system should have made Reid aware of the missing
deposits.  Deposit tickets are prepared in triplicate (white,
yellow, and pink copies).  King Aff. ¶ 6.  The pink copy is for
the depositor's records and the bank keeps the white copy and
returns the stamped yellow copy to the depositor.  Id.  King
alleges that Reid should have had the pink copies in her
possession, and should have realized that 79 yellow bank stamped
deposit receipts were never received.  Id. ¶¶ 6, 9.  In her
affidavit Reid avers that she was only one of several employees
making deposits and under the implemented procedures it was
impossible for any one employee to track all of the money.  Reid
Aff. I ¶ 3.  Thus, the issues of what Reid's fiscal
responsibilities entailed and whether she was responsible to
track the receipts remain in dispute.

Furthermore, King asserts that it was Reid's responsibility
to reconcile the bank records which would have been impossible to
do without noticing the missing receipts.  King Aff. ¶ 7.  Reid
does not offer any explanation as to how she could perform this
job function and remain unaware of the missing deposits.
Accordingly, this Court finds that disputes of fact remain as to
Reid's involvement with respect to the missing funds and as to
Reid's fiscal responsibilities in her position as manager of The

Golf Club.[4]

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to dismiss or, in the alternative, for summary judgment will be denied as to all counterclaims.  A separate order consistent with the reasoning of this Memorandum will follow.

_____/s/_____

William M. Nickerson
Senior United States District Judge

Dated: September 29, 2005

---

[4] Additionally, the Court notes that the possibility exists for The Golf Club to further support its allegations through discovery, which has not yet taken place.  The Golf Club's counsel, through his own affidavit, asserts that through discovery it hopes to attain such information as Reid's bank and gambling records.  Dickerman Aff. ¶ 6.